## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CAROLYN P. CUNNINGHAM,

      **Plaintiff,**

vs.                                                                                            No.  05cv1242 DJS

MICHAEL J. ASTRUE,[1]
COMMISSIONER OF SOCIAL SECURITY,

      **Defendant.**


### MEMORANDUM OPINION

This matter is before the Court on the following motions: **(1)** *pro se*[2] Plaintiff's

(Cunningham's) Legal Brief Supporting Civil Action for Right of Court Review of Unfavorable

Social Security Benefits Award Decision Pursuant to Title 42 U.S.C. §[405](g)**[Doc. No. 17]**,

filed September 1, 2006; **(2)** Plaintiff's Reply to Defendant's Brief and Motion to Vacate

Commissioner's Decision Denying Claimant SSA Disability Benefits and Award Relief Under

U.S.C. 60(b) **[Doc. No. 20]**, filed November 13, 2006; **(3)** Defendant's Motion to Strike **[Doc.**

**No. 26]**, filed December 28, 2006; **(4)** Plaintiff's Motion to Strike Defendant's Motion to Strike

Dated December 28, 2006 **[Doc. No. 27]**, filed January 5, 2007; and **(5)** Plaintiff's Motion to

Strike Defendant's Notice of Briefing Complete [29] Dated January 18, 2007 **[Doc. No. 33]**, filed

---

[1] On February 1, 2007, Michael J. Astrue became the Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Jo Anne B. Barnhart as the defendant in this action.

[2] Although Plaintiff is proceeding *pro se* in this action, she was represented by counsel at the administrative level, including at the May 17, 2004 Administrative Hearing.

February 27, 2007.  On October 1, 2004, the Commissioner of Social Security issued a final

decision denying Cunningham's claim for disability insurance benefits.  Cunningham seeks judicial

review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).  Having considered

the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed,

the Court finds that the motion to remand is not well taken and will be DENIED.

## I.  Factual and Procedural Background

Cunningham, now fifty-nine years old (D.O.B. January 16, 1947), filed her application for

disability insurance benefits on April 8, 2002 (Tr. 132), alleging disability since January 1, 1989

(Tr. 132), due to fibromyalgia, TMJ, bipolar disorder, anxiety, migraines, allergies, arthritis, ulcer,

hiatal hernia, Barrett's esophagus, collagen disorder, broken tailbone, and broken toe (Tr.  94).

Cunningham has a high school education and one semester of college education and no

vocationally relevant past work experience.  Tr. 94.

On October 1, 2004, the Commissioner's Administrative Law Judge (ALJ) denied

benefits, finding that "[w]hile the claimant maintains she became fully disabled by January 1, 1989

due to multiple medical problems, there is insufficient evidence to support that her condition(s)

was disabling prior to December 31, 1990."  Tr. 96.  Accordingly, the ALJ found "no medical

evidence of a disabling condition prior to December 31, 1990."  Tr. 97.  Cunningham filed a

Request for Review of the decision by the Appeals Council.  On September 14, 2005, the Appeals

Council denied Cunningham's request for review of the ALJ's decision.  Tr. 6.  Hence, the

decision of the ALJ became the final decision of the Commissioner for judicial review purposes.

Cunningham seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. §

405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final

decision is supported by substantial evidence and whether she applied correct legal standards.

*Hamilton v. Secretary of Health and Human Servs.,* 961 F.2d 1495, 1497-98 (10th Cir. 1992).

Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable

mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395

(10th Cir. 1994).  "Evidence is not substantial if it is overwhelmed by other evidence in the record

or constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Moreover, "all of the ALJ's required findings must be supported by substantial evidence,"

*Haddock v. Apfel,* 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence

of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291

(10th Cir. 1989).  "[I]n addition to discussing the evidence supporting his decision, the ALJ must

discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative

evidence he rejects."  *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996).  Therefore, while

the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States*

*Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must

meticulously examine the record as a whole, including anything that may undercut or detract from

the ALJ's findings, in order to determine if the substantiality test has been met.  *See Washington*

*v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

## III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a

claimant must establish a severe physical or mental impairment expected to result in death or last

for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920. At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse and remand, Cunningham presents the following issues for review:

(1)   Was the Plaintiff's hearing conducted on the basis of misinformation which had never been corrected at the basic levels of the review process?

(2)   Did the Plaintiff attempt to cooperate as fully as possible by providing medical information about her conditions or disabilities and treatment, and was all of her information included on the Exhibit List for the May 17, 2004 hearing?

(3)     Did the Social Security Administration and its affiliates attempt to help the Plaintiff obtain

medical documents she did not already have in her possession as stated, and if so, how

could the investigators have done such a thorough investigation without uncovering ANY

facts?

(4)     Why did it take more than four years to obtain a copy of her file when the Plaintiff was

advised at the onset she has a right to know what it contains?

(5)     Why did the investigators refuse to contact any of Mrs. Cunningham's treating physicians

for information about her conditions or disabilities as specified in the Social Security Law

and why was the testimony of a doctor who had never seen Mrs. Cunningham nor talked

to her doctors accepted over detailed records who had actually examined her?

The Commissioner presents the issue as "whether substantial evidence of record supports

the final decision of the Commissioner that Plaintiff is not disabled within the meaning of the

Social Security Act."  Def.'s Resp. at 1.

As a preliminary matter, the Court will address Defendant's Motion to Strike **[Doc. No.**

**26]**, filed December 28, 2006.  Defendant moves the Court to strike Cunningham's "Motion to

Vacate SSA decision" that is part of **Docket No. 20** and Cunningham's Reply, **Docket No. 25**.

The Court will grant the motion.  Additionally, the Court denies Plaintiff's Motion to Strike

Defendant's Motion to Strike Dated December 28, 2006 **[Doc. No. 27]**, filed January 5, 2007,

and dismisses as moot Plaintiff's Motion to Strike Defendant's Notice of Briefing Complete [29]

Dated January 18, 2007 **[Doc. No. 33]** since Defendant withdrew that notice (Doc. No. 34).

**ALJ's Finding of Nondisabilitiy at Step Two**

The step-two severity determination is based on medical factors alone, and "does not include consideration of such vocational factors as age, education, and work experience." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the ALJ must "consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. §404.1523. If the claimant's combined impairments are medically severe, the Commissioner must consider "the combined impact of the impairments . . . throughout the disability determination process." *Id*.

The ALJ found that Cunningham was insured for disability insurance benefits through December 31, 1990. Accordingly, Cunningham had the burden to prove that she had a medically severe impairment prior to December 31, 1990. *See Henrie v. United States Dep't of Health & Human* Servs., 13 F.3d 359, 360 (10th Cir. 1993)("Because Ms. Henrie's insured status expired on December 31, 1987, she must prove she was totally disabled prior to that date."). In this case, the ALJ found, at step two of the sequential evaluation process, that Cunningham failed to meet her burden. The ALJ found:

> As to the next step [step two] in the sequential evaluation regarding "severe" impairments, a medically determinable impairment or combination of impairments is "severe" if it significantly limits an individual's physical or mental ability to do basic work activities (20 CFR §404.1520). The Regulations require that if a severe impairment exists, all medically determinable impairments must be considered in the remaining steps of the sequential analysis (20 CFR §404.1523). The record discloses that Ms. Cunningham has complaints of multiple medical problems, and has not worked since July 31, 1985. Although she alleges physical and psychiatric impairments, the medical evidence fails to document a disabling impairment prior to December 31, 1990, the date she last met the insured status requirement for disability purposes. In fact, there is only one page of treatment notes dated September 27, 1990, which reveals that the claimant had no chronic medical problems, and was taking no medications on a regular basis. She had complaints of occasional headaches once or twice per month, which

were relieved with Excedrin.  It was noted that her headaches involved tight neck muscles and sometimes nausea, but had no eye or neurological symptoms.  The claimant also noted that she had been under a lot of stress due to a pending divorce as well as family and business problems (Exhibit 1F/25).

\*\*  \*\*  \*\*  \*\*  \*\*  \*\*

The claimant testified that she stopped working on July 31, 1985 because she could no longer function, and sold the business shortly after.  She stated that she tried to contact the doctors in New Jersey but received responses that they only kept records for seven years. Furthermore, she had changed her name four times.

While the claimant maintains that she became fully disabled by January 1, 1989 due to multiple medical problems, there is insufficient evidence to support that her condition(s) was disabling prior to December 31, 1990.  In order to fully develop the record, it should be noted that the State Agency, claimant's representative, and our office followed up on her leads to request prior medical records, however, all were unsuccessful. Although the claimant submitted written information regarding her medical condition, Ms. Cunningham fails to understand that a judgment cannot be made based on inference and her statements only, but that objective medical evidence is needed.

Tr. 95-96 (emphasis added).

Cunningham had the burden of producing medical evidence showing the severity of her impairments, *see* 20 C.F.R. §404.1512(a), (c), but the Commissioner also has the duty to ensure that an adequate record is developed relevant to the issues raised, *see Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir.1997).  Consistent with this duty, 20 C.F.R. § 404.1512(d) states that the Commissioner will make "every reasonable effort" to help a claimant get records from his or her medical sources.  In this case, the ALJ, Cunningham's attorney,[3] and the State Agency made

---

[3] On June 10, 2004, Cunningham's attorneys wrote to the ALJ informing her that they had "attempted to acquire all available and relevant medical records" but "believe[d] that [they] had done everything possible to develop this case fully."  Tr. 131.

every effort to obtain her medical records.  Moreover, the medical evidence for the relevant time period that is in the record does not support Cunningham's allegations of disability.

On **June 13, 1980**, Cunningham complained of "trouble hearing- buzzing."  Tr. 658.  Dr. Pastore noted "throat sl[ightly] inj[ected]" and assessed Cunningham with "bilateral serous otitis media."  *Id.*  Dr. Pastore prescribed Ornade (decongestant).

On **September 12, 1981**, Cunningham had an x-ray of her right lower leg that showed "no evidence of fracture, dislocation or subluxation" and "no significant bone or joint abnormality."  Tr. 664.

On **May 22, 1984,** Cunningham had an non-reactive premarital serology.  Tr. 663.

On **February 18, 1985**, Cunningham complained of a frontal headache.  Tr. 658.  Dr. Pastore noted "PE (physical examination ) unremarkable" and "recheck CBC" and prescribed Motrin 400.  *Id.*

On **February 25, 1985**, Cunningham had an essentially negative urinalysis and CBC with differential.  Tr. 662.

On **March 22, 1985**, Cunningham reported doing "great."  Tr. 658.  Dr. Pastore noted, "physical examination unremarkable." *Id.*

On **June 13, 1988**, Cunningham had a normal Chem-Screen Profile, including a normal cholesterol ratio.  Tr. 661.

On **June 10, 1988**, Cunningham reported a "great deal of stress."  Tr. 657.  Dr. Pastore assessed Cunningham with "tension headache."  Dr. Pastore prescribed Esgic (acetaminophen).

On **June 20, 1988**, Cunningham sought treatment from John J. Pastore, M.D. for a "hamster bite" of the left index finger.  Tr. 659.

8

On **June 28, 1988**, Cunningham reported, "**Doing great**."   Dr. Pastore noted, "chest

clear" and prescribed Esgic.   Tr. 657.

On **August 30, 1988**, Cunningham reported to Dr. Pastore that she was "doing well."   Tr.

657.

On **October 27, 1988**, Cunningham reported to Dr. Pastore that she was "Doing very

nicely" and that her "headaches [were] responding to Esgic."   Tr. 657.

On **October 23, 1989**, Dr. Pastore noted: "Right dorsal radiculopathy from under

scapula."   Tr. 657.   Dr. Pastore prescribed parafon forte (muscle relaxant).   Tr. 657.

On **September 27, 1990**, a health care provider noted the following:

S[ubjective][what the patient reports]:43 YOWF.   Non-smoker.   No chronic medical problems. On no meds on a regular basis.   Over the last several months has had headaches almost everyday.   These seem to always develop the same way and involve tight neck muscles with tight tender scalp muscles that feed "like a band."   There are no eye symptoms, neuro symptoms, etc., but sometimes she gets nausea when the pain gets bad.   She's been under a lot of stress lately with a pending divorce, family problems, etc.   Her MP's that were quite regular now vary from 3-4 wks, but the bleeding is otherwise unchanged.   Has a mild headache now.

O[bjective]: Alert.   Oriented.   In NAD [no apparent distress].
        HEENT [head, ears, eyes, nose, throat]  PERRL [pupils equal, round, and react to light].   TM's [tympanic membranes] normal.   Mouth and throat clear.
        Scalp– mild tenderness on the right (where she says her headache is today).   Neck muscles are also mildly tender and she reports that this is better than what they usually are.
        Neck– Supple.   No nodes.
        Neuro– Completely intact.
        Lungs– clear.
        Heart– RR [regular rhythm].

A[ssessment]:    (1)  Muscle/contraction headaches.
                 (2)  Stress/Anxiety

9

> P[lan]:  Excedrin has helped in the past and she will continue to use some of that.  In addition
> she will use some heat and try Parafon as above (Parafon Forte DSC (for muscle spasms) one
> every six hours as needed).  Her divorce is almost over and she hoping that the stress level will
> decrease.

Tr. 469(**Ex. 1F/25**).  These medical notes are typed and include the initials "ARS."  According to

Cunningham these medical notes are from Arlen Stauffer, M.D.[4]

Therefore, as late as September 27, 1990, the medical record does not support

Cunningham's allegation that she stopped working on July 31, 1985 because she could no longer

function and that she was fully disabled by January 1, 1989.  There are also medical records for

1991, and these records do not support Cunningham's allegations of disability.  For example, on

March 22, 1991(Tr. 462-464), Cunningham completed a "Patient's Medical History" and, under

"DO YOU HAVE A HISTORY OF THE FOLLOWING," checked "NO" for 24 out of the 28

listed conditions, including "NO" to arthritis, rheumatism, bursitis, chest pains, depression, high or

low blood pressure, heart trouble, ulcer, sleep disorder, pain or pressure in the chest, hay fever,

etc.  Tr. 464.  The only conditions Cunningham claimed to suffer were a Bartholin cyst in 1967

and 1969, whiplash due to a car accident in 1965, and the removal of a "cancerous mole."  *Id.*

Under "ANY OTHER INFORMATION THE DOCTOR SHOULD KNOW ABOUT YOU,"

Cunningham noted "chronic migraine headaches, irregular menstrual cycle last year."  *Id.; see*

*also* Tr. 458 (May 14, 1991–  evaluation by Frank Hughes, physician assistant; complaints of

headache; normal examination with no neck muscle tenderness, not tight, "trial of Midrin &

---

[4] In her "Legal Brief Supporting Civil Action for Right of Court Review of Unfavorable
Social Security Benefits Award Decision Pursuant to Title 42 U.S.C. §(g)," at page 7,
Cunningham states: "However, through the Plaintiff's own investigation of the Exhibit List she
was able to relate Exhibits 1F Orlando Naval Hospital 25 pages (this is where the stray report
from **Dr. Arlen Stauffer** showed up), . . . ."

Inderal; return in 2 ½ – 3 wks."); Tr. 454 (June 10, 1991– referral by Frank Hughes for civilian

medical care due to irregular menses); Tr. 456 (June 10, 1991– evaluation by Frank Hughes; "her

headaches were occurring about daily – but since buying meds headaches have decreased in

frequency and duration, lasts only 1 ½ hours, not all day); Tr. 448 (June 28, 1991– evaluation by

P. Clark,  physician assistant; history of headaches taking Inderal with some relief, here for lab

results; elevated cholesterol, diet and exercise); Tr. 445-446 (October 17, 1991 follow up by P.

Clark– Review medication, long history of migraine headaches, increase Inderal); Tr. 447

(November 18, 1991, prescription refill by P. Clark).

Additionally, on February 11, 2004, Cunningham's counsel submitted interrogatories to

George L. Dixon, Jr., M.D., an orthopedic surgeon.  Tr. 653-654.  Cunningham's counsel

attached the following to the interrogatories; (1) copies of exhibits **1F/25** (25 pages) through 14F;

(2) a three page letter dated September 4, 2002 from Rev. Charles H. Manning; (3) a four-paged

letter from John A. Flores, dated November 18, 2002; and (4) and a one page letter from Jorge

Vargas, M.D., dated August 23, 2002.  *Id.*  Dr. Dixon never examined Cunningham.  *Id.*

Counsel informed Dr. Dixon that Cunningham alleged an onset date of disability of December 27,

1989 and her date last insured was December 31, 1990.  Counsel directed Dr. Dixon to answer

the interrogatories as an impartial medical examiner.  After reviewing the records attached to the

interrogatories, Dr. Dixon answered the following question as follows:

> 7.    During this time period, were there any difficulties she would have had with
> performing sedentary work on a full-time and sustained basis?  Please assume that
> sedentary work requires sitting at least six hours out of an eight hour workday and
> lifting up to ten pounds occasionally.  If yes, please describe these difficulties and
> state whether they have continued to the present. **Physically, there seems to be no
> recorded reason why she could not do at least sedentary work as you describe
> during the period 12/27/89 to 12/31/90.  Mentally, she was clearly distraught and**

> **under psychiatric care, the <u>needed details of which remain unknown, and await</u> <u>the report of Dr. Arlan Stauffer who cared for her in 1990</u> (page 5 of John Flore's (sic) report . . . ."**

Tr. 654-655.  However, Dr. Flores made clear in a letter to the Social Security Appeals Review Committee that he had "only just begun to see Mrs. Cunningham since **July 25th, 2002**" and "must rely on the patient's medical history and her extensive medical records from 1990 to date for an assessment of her condition."  Tr. 645-646.  Dr. Flores relied on Cunningham's extensive notes.  Tr. 647-648.  Cunningham's Note No. 17 states, "Depression– since 1983; severe 1989; **<u>dx anxiety Dr. Arlan Stauffer 1990</u>**; 1992–89 Dr. James Byrne; 1995-2000 Dr. Susan Hole; 2002 Dr. Jorge Vargas; family history mother attempted suicide; maternal grandmother; sons." Tr. 655.

Moreover, Cunningham's attorney provided **Exhibit 1F/25** to Dr. Dixon; thus, Dr. Dixon reviewed Dr. Arlen Stauffer's 1990 "report."  Exhibit **1F/25** is the report by **Dr. Arlen Stauffer** that Cunningham contends supports her disability in 1990.  As previously noted, Dr. Stauffer assessed Cunningham as having "muscle contraction headaches" and "stress/anxiety."  Tr. 469. However, Dr. Stauffer did not prescribe any medication for the anxiety and did not refer Cunningham to a psychologist, psychiatrist or therapist.  Cunningham mistakenly believes that an assessment of "anxiety" in September 1990 suffices to support her claims of total disability prior to December 31,1990.  Under the regulations, it does not.

Additionally, Cunningham submitted several quite voluminous "statements"of her impairments which the Court has reviewed.  However, the ALJ properly informed her that her "statements alone [were] insufficient to establish the existence of an impairment" prior to

December 31, 1990.  20 C.F.R. §404.1528(a)(claimant's statements alone insufficient to establish existence of impairment).

**Conclusion**

The Court's role is to review the record to ensure that the ALJ's decision is supported by substantial evidence and that the law has been properly applied.  The Court is sympathetic to Cunningham's concerns, however, in light of the narrow scope of the Court's review, the Court is compelled to affirm the ALJ's decision that Cunningham failed to prove that she had a medically severe impairment prior to December 31, 1990, and was thus not under a disability at any time prior to that date.

A judgment in accordance with this Memorandum opinion will be entered.

_____
**DON J. SVET**
**UNITED STATES MAGISTRATE JUDGE**